**SIGNED THIS: September 29, 2020**

_____

**Mary P. Gorman**
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | Case No.    19-71492 |
| KEVIN R. GAFFNEY, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |

## O P I N I O N

Before the Court is creditor S.P. Richards Company's Motion to Allow the Tardily Filed Proof of Claim to be Treated as Timely, Pursuant to 11 U.S.C.A. §726(a)(2)(C) or, Alternatively, Motion to Extend Time to File Proof of Claim, Pursuant to FRBP Rule 3002(c)(6)(A). For the reasons set forth herein, the Motion will be denied.

## I. Factual and Procedural Background

Kevin R. Gaffney ("Debtor") filed his voluntary Chapter 7 petition on October 11, 2019. On his Schedule A/B: Property, the Debtor disclosed a 25% ownership interest in Midwest Office Supply, Inc. ("Midwest").[1] The Debtor scheduled ownership of an Ameriprise Financial account in the approximate amount of $136,000 and a Janus Henderson account valued at $41,500. He also disclosed ownership of a home and a vehicle in which there appeared to be equity.[2] On his Schedule E/F: Creditors Who Have Unsecured Claims, the Debtor identified S.P. Richards Company ("SPR") as being owed $2,266,831 based on his personal guaranty of a debt owed by Midwest to SPR. He scheduled a total of $4.2 million in unsecured debt.[3]

Included with the Debtor's filing was the list of creditors' names and addresses required by Bankruptcy Rule 1007(a), commonly referred to as the mailing matrix. On the mailing matrix, the Debtor listed SPR's address as "Weinberg Wheeler Hudgins Gunn & Dial, 3344 Peachtree Road, NE, Suite 2400, Atlanta, GA 30326."

The same day that the Debtor's petition was filed, the Clerk's office issued a Notice of Chapter 7 Bankruptcy Case—No Proof of Claim Deadline

---

[1] Midwest filed its voluntary petition for relief under Chapter 7 on January 15, 2019, and was assigned case no. 19-70037. Midwest listed S.P. Richards Company as a creditor and identified PO Box 102458, Atlanta, GA 30368, as the company's mailing address. On February 5, 2019, the Chapter 7 case trustee docketed a request for a claims bar date to be set, and the Court set May 26, 2019, as the last day to file proofs of claims for nongovernmental entities. S.P. Richards Company filed a proof of claim in the Midwest case for an unsecured debt in the amount of $2,266,831.08 on May 21, 2019.

[2] The Trustee has liquidated the two accounts, receiving a total of $185,862.71. The Debtor has compromised with the Trustee regarding the equity in his home and vehicle for $49,500.

[3] Only one creditor other than SPR has filed a claim. Williamsville Sate Bank & Trust timely filed a claim for $323,510.10

("Notice of Case Filing"). The Notice of Case Filing included dates set for the meeting of creditors and the deadline for objecting to discharge or challenging the dischargeability of particular debts.[4] As for proofs of claim, the Notice of Case Filing included standard language directing creditors not to file proofs of claim unless and until it became apparent that there would be assets available to pay claims and advising that, in such case, the Clerk would send a notice of the deadline for filing claims.

On November 13, 2019, following the meeting of creditors, the Chapter 7 case trustee ("Trustee") docketed a request that a deadline to file proofs of claim be set. The Court entered an order setting a deadline of February 13, 2020, for all nongovernmental creditors to file proofs of claim. The Clerk mailed notice of the deadline to all creditors on the mailing matrix.

On April 17, 2020, more than two months after the deadline had passed, SPR filed a proof of claim in the unsecured amount of $2,266,831.08. On April, 28, 2020, SPR filed its Motion to Allow the Tardily Filed Proof of Claim to be Treated as Timely, Pursuant to 11 U.S.C.A. §726(a)(2)(C) or, Alternatively, Motion to Extend Time to File Proof of Claim, Pursuant to FRBP Rule 3002(c)(6)(A) ("Motion to Allow Claim").

According to the Motion to Allow Claim, SPR is a wholesale supplier of office supplies and business products and provided such supplies and products to Midwest. The Debtor was a guarantor of Midwest's debt to SPR. The law firm of Weinberg Wheeler Hudgins Gunn & Dial ("WWHG&D") has six

---

[4] An amended notice was issued on October 15, 2019, changing the date of the creditors meeting.

offices in five states and hundreds, perhaps thousands, of clients. Attorney Henry C. DeBardeleben, of WWHG&D's Atlanta office, had handled general business litigation for SPR but was not a bankruptcy attorney. Attorney Matthew Kramer, of the firm's Miami office, is the only WWHG&D attorney who handles bankruptcy matters and, in fact, was the attorney that had filed SPR's claim in Midwest's case. No other attorney at WWHG&D had previously represented SPR, and no attorney entered an appearance in this case for SPR until the Motion to Allow Claim was filed.

In an affidavit attached to the Motion to Allow Claims, Attorney DeBardeleben says that he received the Notice of Case Filing in late October. Because it was not addressed to any particular attorney at WWHG&D, the Notice of Case Filing was not immediately routed to him. He says that, after receiving the Notice of Case Filing, he "discussed the Notice with SPR" and also forwarded a copy of the Notice of Case Filing to attorneys at Rasmussen, Dickey, and Moore who were representing SPR in a state court collection action against the Debtor.[5] Attorney DeBardeleben says that he did not realize at the time that SPR had not also received the Notice of Case Filing directly. The Notice of Case Filing stated that no deadline for the filing of claims had been set as it appeared there were no assets for distribution to creditors.

---

[5] The state court case is *SPR v. DeMarco, et al.*, #2019-L-00024, filed in the Circuit Court of Sangamon County, Illinois. The case was filed on October 11, 2019, the same day as the Debtor filed this case. The dockets show that the bankruptcy was filed at 10:07 a.m. and the state court matter was filed at 12:20 p.m. Accordingly, although the Debtor is a named defendant, he could not have known about the unfiled state court case when he filed this case; he did not list the state court case on his statement of financial affairs and did not list the attorneys who filed the case in his schedules or on his mailing matrix. The state court docket does not indicate that the Debtor was ever served with summons in the case but does show an alias summons was recently issued to the Debtor. The Debtor has never filed any notice in the state court case to alert the state court to his bankruptcy filing. Attorney DeBardeleben is shown as co-counsel on the state court complaint.

According to Attorney DeBardeleben, Attorney Kramer checked the docket in this case on April 4, 2020. At that time, he discovered that a February 2020 deadline for filing claims had been set in November 2019 and that the deadline had passed. Attorney DeBardeleben says that neither he nor Attorney Kramer received the order setting the claims deadline, but, after learning of its existence, he was able to determine that the document had been received at his firm's Atlanta office. After learning of the deadline, the claim for SPR and the Motion to Allow Claim were filed.

At a hearing on the Motion to Allow Claim, the Trustee said that his initial reaction to SPR's Motion to Allow Claim was to not object; he believed that SPR had not received proper notice of the deadline. After further review, however, he said that he believed that the Motion to Allow Claim should be denied and asked for time to respond in writing. The hearing was continued, and both the Trustee and the Debtor subsequently filed written responses.

The Trustee filed a short response suggesting that only three facts were critical to the Court's decision. First, he noted that Attorney DeBardeleben actually received the Notice of Case Filing and provided a copy thereof to the attorneys who had subsequently filed the state court collection action. Second, Attorney DeBardeleben has admitted that he spoke with SPR directly about the Notice of Case Filing. Third, the Notice of Case Filing was received by Attorney DeBardeleben before the order was entered setting the deadline to file claims and more than three months before that deadline had run. The Trustee cited case law suggesting that, at a minimum, based on the admitted facts, SPR had

actual notice of the case filing and therefore had a duty to check the docket and learn of the deadline to file claims. He argued that the Motion to Allow Claim should be denied.

The Debtor's response to the Motion to Allow Claim asserts that WWHG&D had been retained to represent SPR prior to the bankruptcy and, specifically, that the firm had been hired to collect the debt owed by the Debtor to SPR. In support of that assertion, the Debtor relies solely on a collection letter sent to Midwest and its guarantors, including the Debtor, by Attorney DeBardeleben in December 2018. The Debtor argues that sending the Notice of Case Filing to WWHG&D was not only sufficient to impute notice to SPR but was the "one, most effective, best possible" way to serve SPR. Alternatively, the Debtor asserts that SPR received actual notice after Attorney DeBardeleben received the Notice of Case Filing and admittedly discussed it with SPR. The Debtor also cites case law for his position.

At a brief telephonic hearing after the responses had been filed and SPR had replied, the attorneys all agreed that this Court could decide the matter based on the papers filed and without an evidentiary hearing. The Court raised, sua sponte, the issue of whether the Debtor had standing to participate in the matter. The Debtor's attorney admitted that he did not.

The issues are fully briefed and, after review, the Court agrees that there is no need for an evidentiary hearing.  The matter is ready for decision.

## II. Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. All bankruptcy cases and proceedings filed in the Central District of Illinois have been referred to the bankruptcy judges. CDIL-Bankr. LR 4.1; *see* 28 U.S.C. §157(a). Matters concerning the administration of the bankruptcy estate and the allowance or disallowance of claims against the estate are core proceedings. 28 U.S.C. §157(b)(2)(A), (B). The issues before the Court arise from the Debtor's bankruptcy itself and from the provisions of the Bankruptcy Code and may therefore be constitutionally decided by a bankruptcy judge. *See Stern v. Marshall*, 564 U.S. 462, 499 (2011).

## III. Legal Analysis

### A. Standing

As set forth above, this Court has questioned the Debtor's standing to participate in the matter and to object to the Motion to Allow Claim. Although a debtor clearly has a general interest in his own case and how it is administered, standing to actually participate in contested matters must be based on the debtor having "a pecuniary interest in the outcome" of the particular matter. *In re Cult Awareness Network, Inc.*, 151 F.3d 605, 607 (7th Cir. 1998). "Debtors, particularly Chapter 7 debtors, rarely have such a pecuniary interest because no matter how the estate's assets are disbursed by the trustee, no assets revert to the debtor." *Id.* at 607 (citation omitted). With respect to litigation involving the allowance of claims, a debtor can establish

standing only by showing the likelihood of a surplus after paying all claims. *Id.* at 608; *see also In re Stinnett*, 465 F.3d 309, 315-16 (7th Cir. 2006).

Here, there is no likelihood of a surplus, and no one argues that a surplus is a possibility. The Trustee has collected a little over $235,000, but the one timely-filed claim is in the amount of $323,510.10. Further, even though the Motion to Allow Claim will be denied, SPR's tardy claim will have priority over any distribution to the Debtor. 11 U.S.C. §726(a)(3). The Trustee would have to collect over $2.6 million dollars—more than ten times what he has collected to this point—in order to pay his commissions, other costs of administration, the one timely claim, and SPR's tardy claim before there would be a surplus. No one suggests that such a scenario is realistic. Thus, there is no possibility that this is a surplus case, and, accordingly, the Debtor has no standing to object to the Motion to Allow Claim. The Debtor admits as much.

SPR did not raise the standing issue but, rather, responded to the arguments made by the Debtor. And to a large degree, the issues raised by the Debtor regarding imputed notice were raised first by SPR in its Motion to Allow Claim. Thus, both the issues of imputed notice and actual notice will be addressed. The finding against SPR, however, is based solely on the issue of actual notice—an issue raised by the Trustee in his objection to the Motion to Allow Claim. And the key facts relied upon in the decision are only those admitted by SPR.

*B. Notice to SPR*

A debtor filing bankruptcy has a duty to file with the petition "a list containing the name and address of each entity included or to be included" on the schedules. Fed. R. Bankr. P. 1007(a)(1); 11 U.S.C. §521(a)(1)(A). The list is used by the Clerk to send notices about the bankruptcy to creditors and parties in interest. *In re Smith*, 582 F.3d 767, 770 (7th Cir. 2009); Fed. R. Bankr. P. 2002(a). As SPR points out, a debtor is required to provide correct names and addresses of all creditors, and nothing in either Rule 1007(a)(1) or §521(a)(1)(A) explicitly allows a debtor to assume that a creditor can be served through an attorney who does not have an appearance on file in the case.[6] Rather, the purpose of requiring a list that includes complete names and correct addresses is to afford creditors and parties in interest their basic due process right to notice. *In re Glenwood Medical Group, Ltd.*, 211 B.R. 282, 285 (Bankr. N.D. Ill. 1997). In listing addresses, a debtor should make every effort to provide reasonable notice to creditors. *Id.*; *see also In re O'Shaughnessy*, 252 B.R. 722, 734-35 (Bankr. N.D. Ill. 2000) (debtor bears the burden of attempting to ascertain correct addresses for creditors). Notice is reasonable if it is "calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (citations omitted).

---

[6] Obviously, no attorney could appear for a creditor or party in interest until the case is actually filed. Thus, creditors should be listed at their own addresses and receive notice directly until an attorney formally appears.

The requirement of scheduling all creditors with proper addresses is not just for the benefit of those creditors. If a debt is not scheduled and the creditor does not receive actual notice of the bankruptcy in time to file a claim or a complaint to determine dischargeability, the debt may not be discharged. 11 U.S.C. §523(a)(3); *Smith*, 582 F.3d at 777 (citations omitted). There is little benefit to a debtor in failing to exercise diligence in completing the schedules and required list of names and addresses of all persons entitled to notice. And with information about creditors' exact names and correct addresses frequently being easily available through internet searches, it is hard to understand why a debtor would file a case, particularly an asset case, without listing all creditors at their proper addresses.[7]

In considering whether the listing of SPR's address as that of WWHG&D provided the required notice to SPR, the issues of both imputed notice and actual notice must be reviewed. Importantly, SPR bears the burden of proof on these issues. *In re Harrell*, 325 B.R. 643, 648 (Bankr. M.D. Fla. 2005).

### 1. SPR Did Not Receive Imputed Notice.

When a corporate creditor has conducted business with a debtor, mailing bankruptcy notices to the address from which such business has been

---

[7] In a no-asset case, if no deadline to file a claim is set and no distribution is made, an unscheduled debt will not be excepted from discharge on the basis of lack of notice alone. *Karras v. Hansen (In re Karras),* 165 B.R. 636, 638 (N.D. Ill. 1994); *In re Mendiola*, 99 B.R. 864, 867 (Bankr. N.D. Ill. 1989). But if assets are administered in a case and a creditor does not receive notice in time to file a claim before distribution occurs, the debt is excepted from discharge. 11 U.S.C. §§523(a)(3), 726(a)(2)(C)(ii). A literal reading of the Code suggests that it is the entire debt, not just the pro rata portion that the creditor might have been paid if a timely claim had been filed that is excepted from discharge. *Mahakian v. William Maxwell Investments, LLC (In re Mahakian),* 529 B.R. 268, 275-77 (B.A.P. 9th Cir. 2015). Debtors knowing that their case will be an asset case, must exercise diligence in providing notice to all potential claimants to avoid having debts excepted from discharge due to lack of notice.

conducted is reasonable and sufficient to satisfy due process concerns. *Glenwood Medical Group*, 211 B.R. at 285. And if a properly addressed notice is mailed to a creditor, there is a presumption the creditor received the notice. *Id.* at 286 (citations omitted). Here, there is no question but that no notice was sent to SPR at its business address. SPR was not listed at its business address on the Debtor's schedules or lists; SPR was only listed at the address of WWHG&D. No presumption that SPR received notice of this case arises from the schedules or lists filed by the Debtor.

Notwithstanding the fact that SPR was not scheduled by the Debtor at its business address, case law suggests that "[w]hen an attorney is representing a creditor in order to collect a debt outside of the bankruptcy, notice of the bankruptcy petition sent to that attorney by the debtor can be imputed to the creditor." *In re Herman*, 737 F.3d 449, 454 (7th Cir. 2013) (citing *In re Schicke*, 290 B.R. 792, 803 (B.A.P. 10th Cir. 2003); *In re Linzer*, 264 B.R. 243, 248 (Bankr. E.D.N.Y. 2001)). Notice to a creditor's attorney meets due process requirements "so long as there is a nexus between the creditor's retention of the attorney and the creditor's claim against the debtor." *In re San Miguel Sandoval*, 327 B.R. 493, 508 (B.A.P. 1st Cir. 2005).

Determining whether there is a sufficient nexus between the creditor and the attorney so that service on the attorney is imputed to the creditor requires a fact-based analysis on a case-by-case basis. The *Schicke* court found that a totality-of-the-circumstances approach was required and referred to the required nexus as a type of agency. *Schicke*, 290 B.R. at 804. In finding the

existence of such agency, it relied heavily on the fact that the attorney in question was actively representing the creditor in an action against the debtor when the bankruptcy was filed. *Id.* Likewise, the Seventh Circuit in *Herman*, referred to "years of litigation" between the creditor and the debtor and found that the attorney who had represented the creditor throughout all of those years was representing the creditor "in the ongoing claim" at the time of the bankruptcy filing. *Herman*, 737 F.3d at 455. That ongoing representation was sufficient to provide the required nexus to impute service on the attorney to the creditor. *Id.* Courts following *Herman* have likewise concentrated the analysis on whether the attorney who was served with the bankruptcy notice was representing the creditor in current, ongoing litigation at the time. *See, e.g., Island City Snowmobile & ATV Club, Inc. v. Brown*, 2020 WL 2785052, at *5 (W.D. Wis. May 29, 2020).

Applying the case law to the known facts here compels a finding that there was an insufficient nexus between SPR and WWHG&D to impute service on the firm's Atlanta office to SPR. The only known prepetition contact by SPR related to collection of the debt owed by the Debtor was a letter from Attorney DeBardeleben dated December 4, 2018. The letter was addressed to Midwest and all of its guarantors and constituted a demand for payment. Attorney DeBardeleben says in the letter that he had been retained by SPR regarding various agreements entered into between SPR and Midwest and its guarantors. It does not appear that any further communication was made to the Debtor by

Attorney DeBardeleben or WWHG&D during the ten months between the sending of the collection letter and the Debtor's bankruptcy filing.

When this case was filed, there was no pending litigation between SPR and the Debtor, and it is unlikely that the Debtor could have known if and when such litigation would be filed or whether, if filed, Attorney DeBardeleben would appear in the case. Midwest had filed bankruptcy in January 2019, but the claim filed there came from Attorney Kramer in WWHG&D's Miami office, providing no support for general service on the firm's Atlanta office.

The relevant cases discuss ongoing and pending litigation as the nexus for imputing service on a particular attorney to a creditor. When this case was filed, however, all that the Debtor had was a ten-month-old collection letter signed by Attorney DeBardeleben. Thus, it would be a stretch to find a sufficient nexus to cause service of the Notice of Case Filing on Attorney DeBardeleben to be imputed to SPR. But here, service was not made on Attorney DeBardeleben. The Notice of Case Filing was sent to the firm generally because the Debtor listed only the address of the firm as SPR's address. Any nexus between SPR and WWHG&D is simply too tenuous to impute service on the firm to SPR. The Court will not find that SPR had imputed notice of the Debtor's bankruptcy filing.

### 2. SPR Received Actual Notice.

Attorney DeBardeleben has candidly admitted that, notwithstanding the fact that the Notice of Case Filing was not addressed to him, he received it in

late October 2019. He further admits that, thereafter, he sent a copy of the Notice of Case Filing to the attorneys who were then representing SPR in the state court collection action. Finally, he fully acknowledges that he discussed the Notice of Case Filing with SPR.[8] Although Attorney DeBardeleben does not say exactly when he discussed the Debtor's bankruptcy with SPR, he makes no claim that he did not do so in a timely manner, and the only inference that can be drawn from his affidavit is that the discussion occurred in October or November 2019. He says that he never received the notice of the deadline to file claims, although it was sent to the firm generally. Thus, there is no doubt that SPR had actual knowledge of the Debtor's bankruptcy in time to file a claim; it received notice of the Debtor's bankruptcy filing by November 2019, and the claims deadline was February 13, 2020.

In its Motion to Allow Claim, SPR relies on §727(a)(2)(C), which provides that a tardily-filed claim may share pro rata with timely claims if the creditor filing the tardy claim "did not have notice or actual knowledge of the case in time for timely filing of a proof of claim[.]" 11 U.S.C. §726(a)(2)(C)(i). Thus, the issue for decision is whether SPR's admitted actual knowledge of the case bars its tardy claim or whether its lack of actual knowledge of the claims deadline provides a basis to allow its claim.

The majority view is that actual knowledge of a bankruptcy filing satisfies due process requirements and places a duty on a creditor to inquire about bar

---

[8] Attorney DeBardeleben does not disclose with whom at SPR he discussed this case. But if a Notice of Case Filing had been mailed to SPR's business address, then the receipt by anyone there would have been sufficient notice. The Court must assume that Attorney DeBardeleben discussed the case with someone authorized to act on the knowledge or, at least, in a position to pass the knowledge on to someone else who was so authorized.

dates and deadlines. *In re Marino*, 195 B.R. 886, 893 (Bankr. N.D. Ill. 1996)
(citations omitted); *see also In re Sunland, Inc.,* 534 B.R. 793, 798-99 (Bankr.
D.N.M. 2015); *In re Glow*, 111 B.R. 209, 219 (Bankr. N.D. Ind. 1990). This view
places a heavy burden on creditors, but the "statutory scheme and rules
contemplate actual notice to be sufficient" to place a creditor on inquiry notice.
*Marino,* 195 B.R. at 893. "A party with actual notice of a bankruptcy case must
act diligently to protect its interest, despite the lack of formal notice."
*O'Shaughnessy*, 252 B.R. at 730 (citations omitted).

Here, SPR does not suggest that it did anything to protect its rights after
receiving actual notice of the Debtor's bankruptcy filing. SPR apparently made
no inquiry to determine if it was on the mailing matrix and took no action to
correct the address at which it was listed that it now claims was faulty. It did
not retain counsel to enter an appearance and to keep it apprised of how the
case was progressing. It did not question the fact that the only notice received
went to WWHD&G and was apparently received by Attorney DeBardeleben
several weeks after the case was filed, indicating some delay in the process. It
did not work with Attorney DeBardeleben to make sure that, if future notices
addressed to it were received by WWHD&G, the firm's staff would know where
to promptly route such notices.[9] SPR received inquiry notice when it learned
from Attorney DeBardeleben that he had received the Notice of Case Filing.

---

[9] When SPR's tardy claim was filed, the address listed for further notices was the Atlanta office of WWHD&G
without direct reference to Attorney DeBardeleben—the same address that SPR says was faulty. The use of the
address does not change the lack of imputed notice because prior to filing the claim, SPR had never indicated to the
Debtor that WWHD&G's general address could be used for service on it. Further, the Motion to Allow Claim was
filed shortly thereafter by local counsel resulting in electronic notice being received by counsel for all further
matters.

Thereafter, it made no inquiry whatsoever until six months later when Attorney Kramer checked the docket. That was too little, too late and does not relieve SPR of its obligation to inquire when it learned of this case.

In attempting to avoid the consequences compelled by the majority view, SPR relies heavily on *Fogel v. Zell*, 221 F.3d 955 (7th Cir. Cir. 2000). In *Fogel*, the Seventh Circuit considered the effectiveness of notice by publication in a Chapter 11 case and contrasted the matter before it with proceedings in Chapter 7 cases. The *Fogel* court said that similar issues arising in Chapter 7 cases would be analyzed differently because knowledge of the filing of a Chapter 7 case would allow a creditor to compute the claims filing deadline based on applicable provisions of the Code and Rules. *Id.* at 964. SPR points out that, although the Seventh Circuit correctly cites the provisions of the Code and Rules, it overlooks the fact that, as a practical matter, virtually all courts send the initial notices of Chapter 7 case filings with instructions to creditors not to file claims and with a representation that, if a claims deadline is later set, additional notice will be provided. Fed. R. Bankr. P. 2002(e), 3002(c)(5). By extension, SPR asserts that, if the Seventh Circuit had recognized that the routine practice is for claims deadlines to be set that cannot be computed just by knowing the date of a bankruptcy filing, it would have held that notice of such dates must be actually received by a creditor in order for a claim to be time-barred.

SPR's argument is not persuasive. The Seventh Circuit has held that in the bankruptcy context "[d]ue process does not always require formal, written

notice of court proceedings[.]" *Matter of Pence*, 905 F.2d 1107, 1109 (7th Cir. 1990). When creditors learn of a bankruptcy filing, they "must follow the administration of the bankruptcy estate to determine what aspects of the proceeding they may want to challenge." *Id.* Nothing in *Fogel* can be construed to suggest that its intent was to overrule *Pence* or to dissent from the majority view that actual knowledge of a bankruptcy filing places a creditor on inquiry notice. To the contrary, even very short actual notice of a filing may place a burden on a creditor to inquire as to deadlines and to act quickly. *Herman*, 737 F.3d at 453.

SPR clings to the statement in *Fogel* that "[t]he general rule . . . is that the only knowledge required is knowledge of a critical stage of the proceeding from which the bar date can be computed . . . , not the bar date itself." *Fogel*, 221 F.3d at 964. But, as stated above, the court drew no distinction between Chapter 7 cases with and without assets; the distinction it drew was between Chapter 11 and Chapter 7 cases, leaving the inference to be drawn that, consistent with *Pence*, knowledge of a Chapter 7 filing could be sufficient for due process purposes. Moreover, the cases that adhere to the notion that actual knowledge under §726(a)(2)(C)(i) means knowledge of not only the case but the bar date as well largely rely on *City of New York v. New York*, 344 U.S. 293, 397 (1953), which, as several courts have pointed out, involved a case under the old Bankruptcy Act and rested on now out-of-date statutory rather than constitutional grounds. *See GAC Enters., Inc. v. Medaglia (In re Medaglia)*, 52 F.3d 451, 456 (2d Cir. 1995); *In re Sam*, 894 F.2d 778, 781 (5th Cir. 1990).

The current Code is clear—actual knowledge of the case is dispositive. SPR had actual knowledge of the Debtor's bankruptcy filing in time to inquire, learn of the claims filing deadline, and file a timely claim. SPR's tardy claim cannot be allowed.

SPR's final argument is that this Court can and should extend the deadline for it to file a claim pursuant to Rule 3002(c)(6)(A), which provides for extensions of time when a debtor has "failed to timely file the list of creditors' names and addresses required by Rule 1007(a)[.]" Fed. R. Bankr. P. 3002(c)(6)(A). Problematic for SPR with this argument is the fact that the Debtor did not fail to file the required list but, rather, filed a list that contained an inaccurate address for SPR. Several recent decisions suggest that the relief provided by Rule 3002(c)(6)(A) may only be granted when the express conditions of the Rule are met. *See, e.g., In re Somerville*, 605 B.R. 700, 706-07 (Bankr. D. Md. 2019); *In re Wulff*, 598 B.R. 459, 465 (Bankr. E.D. Wis. 2019). Insufficient notice alone does not compel an extension under the Rule; an extension may be granted only if the insufficient notice was due to the failure to file a mailing matrix or the notice went to a foreign address. *Wulff*, 598 B.R. at 465.

SPR cites several cases that have allowed extensions of time based on faulty rather than totally non-existent mailing matrices. *See, e.g., In re Vanderpool*, 606 B.R. 425 (Bankr. D. Colo. 2019); *In re Mazik*, 592 B.R. 812 (Bankr. E.D. Pa. 2018). This Court finds those cases less persuasive than *Somerville* and *Wulff*. More importantly, however, the cases cited by SPR

involve creditors with no notice of the bankruptcy filing in time to file a claim and provide no support for the situation here where the creditor, SPR, had actual notice of the case filing in time to file a claim. The Court finds no authority under Rule 3002(c)(6)(A) to extend the claims deadline and therefore must decline to do so.

## IV. Conclusion

The result here is unfortunate. The Debtor had a duty to list all of his creditors with their correct names and addresses so that his creditors would receive the notice of his bankruptcy filing to which they were entitled. For reasons that are not clear, the Debtor failed in that duty and listed SPR's address as that of the law firm of an attorney that had sent him a collection letter ten months prior. The Debtor did not have the right to assume or speculate about who SPR might hire when he filed bankruptcy and did not even remotely give what he claimed was the "one, most effective, best possible" notice of the case filing to SPR. In making this mistake, the Debtor put the discharge of his guarantee of over $2 million to SPR in jeopardy. Had the Debtor done what he was required to do and what he could have easily done, the problems in this case would not have occurred.

SPR did not receive proper, formal notice of the filing of this case. But SPR did ultimately receive actual notice of the case filing, and it received that actual notice in time to inquire and file a timely claim. Thus, based on all relevant case law, the Motion to Allow Claim must be denied.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###